IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| PERFORMANCE CHEMICAL COMPANY | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| | § | Civil No. 6:21-CV-00222-ADA |
| *v.* | § | |
| | § | |
| TRUE CHEMICAL SOLUTIONS, LLC | § | |
| | § | |
| *Defendant* | § | |

**PERFORMANCE CHEMICAL COMPANY'S REPLY IN SUPPORT OF MOTION FOR
SANCTIONS AND REQUEST FOR DEATH PENALTY SANCTIONS**

Plaintiff Performance Chemical Company ("PCC") files this reply to True Chemical Solution's Response in Opposition to [PCC's] Motion for Sanctions ("Response," ECF No. 320). Based on the new evidence of misconduct revealed by True Chem's Response and the affidavit of Tyler Hinrichs (ECF No. 321), PCC now requests that the Court enter a judgment of death penalty sanctions.

## I.        Standard for Death Penalty Sanctions

"The most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 642-43 (1976).   "The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46, (1991). Under Federal Rule of Civil Procedure 37 and the Court's inherent powers, the Court may

"impose 'just' sanctions on a party who disobeys a discovery order" in order to maintain obedience to court orders. *Apogee Telecom, Inc. v. Dungan*, A-16-CA-00061-SS, 2016 WL 9308329, at *3 (W.D. Tex. Sept. 23, 2016); *see also O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 449 Fed. Appx. 923, 930 (Fed. Cir. 2011). "A district court can, among other things, render a default judgment against the disobedient party and require the payment of the opposing party's expenses, including attorneys' fees." *Id.* (citing Fed. R. Civ. P. 37(b)(2)(A)(vi); *F.D.I.C. v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994)).

In deciding whether to enter default judgment (death penalty) sanctions, the Court must consider whether: "(1) the party's refusal to comply with the discovery order was willful or in bad faith, (2) the client knew or participated in the violation of the discovery order, (3) the violating party's misconduct substantially prejudice[d] the opposing party, and (4) a less drastic sanction would substantially achieve the desired deterrent effect." *Id.* (citing *Conner*, 20 F.3d at 1380-81). The crux of whether a default judgment is appropriate is whether the infringing party acted in bad faith or in willful abuse of the discovery process. *See E.O.C. v. General Dynamics*, 999 F.2d 113, 119 (5th Cir. 1993) (Court may impose sanctions in the form of a default judgment under the court's inherent power for "bad faith or willful abuse of the judicial process."). Additionally, lesser sanctions are not appropriate if they would not cure the prejudice suffered or deter future instances of the bad conduct in question. *See O2 Micro Intern. Ltd.*, 449 F. Appx. at 930–31. (affirming district court's finding that monetary sanctions alone were inappropriate because "[t]o hold otherwise would effectively allow a litigant to buy a new jury panel by intentionally violating the court's orders *in limine*."). In *Micron Tech, Inc. v. Rambus, Inc*, the Federal Circuit held that the appropriate test for bad faith was whether the spoliator intended to impair the ability of the opposing party to litigate its claims or defenses. 645 F.3d 1311, 1327 (Fed Cir. 2011). "Litigations

2

are fought and won with information. If the district court finds facts to conclude that [the spoliator's] goal […] was to obtain an advantage in litigation though the control of information and evidence, it would be justified in making a finding of bad faith." *Id*. "A showing of prejudice to the opposing party requires only "plausible, concrete *suggestions* as to what the destroyed evidence *might* have been." *Id*. at 1328. "If it is shown that the spoliator acted in bad faith, the spoliator bears the 'heavy burden' to show a lack of prejudice to the opposing party because 'a party who is guilty of … intentionally [destroying or concealing evidence] … should not easily be able to excuse the misconduct by claiming that the vanished documents were of minimal import." *Id*. (citing *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 925 (1st Cir. 1988).

A district court's imposition of sanctions under its inherent power and Rule 37 is reviewed under an abuse of discretion standard. *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1023 (5th Cir. 1994). Courts in this district have assessed a default judgment as sanctions when a party violates court orders and its discovery obligations in bad faith. *See Apogee Telecom, Inc. v. Dungan*, A-16-CA-00061-SS, 2016 WL 9308329, at *5 (W.D. Tex. Sept. 23, 2016); *see also Matter of United Markets Intern., Inc.*, 24 F.3d 650, 654 (5th Cir. 1994). So has the Federal Circuit. *Organik Kimya, San. v. Tic. A.S.*, 848 F.3d 994, 1003 (Fed. Cir. 2017) (upholding grant of default judgment as sanction for spoliating evidence in bad faith); *Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1261 (Fed. Cir. 1985) (upholding grant of default judgment for discovery abuse).

## II.     True Chem's Response and Mr. Hinrich's testimony eliminate any doubt that this misconduct was willful and in bad faith.

True Chem's response and Mr. Hinrich's testimony confirm the following facts as undisputed:

(1) True Chem engaged in spoliation when it removed the PLC/HMI component from its T-9 trailer in late 2019.

(2) True Chem violated a court order when it hid the PLC/HMI device during the January 2020 inspection.

(3) Mr. Hinrichs then lied under oath, repeatedly, when he testified that he had never automated True Chem's frac trailers or used a PLC.

(4) True Chem provided false interrogatory answers, also under oath, in which it repeatedly denied automating the trailers and using a PLC or other similar device.

(5) True Chem knew that it was supposed to turn over to PCC all evidence of its automation activities and equipment and it chose instead to hide all this evidence for a year and a half.

Prior to filing its Motion, PCC knew that True Chem had engaged in egregious discovery abuse. What PCC did not realize until reviewing True Chem's response, however, was that its lawyers at John & Morgan P.C. were also complicit. Mr. Hinrich's testimony in his declaration is that "[t]he first time True Chem communicated either the existence of the B&H Project or the PLC/HMI component to John & Morgan P.C. was ***January 20, 2021***."[1] That was ***over two months ago***, and neither True Chem nor its counsel at John & Morgan told PCC about this critical evidence until they were caught last week.

Over the course of the last two months, instead of alerting PCC's counsel to the undisclosed evidence or the identity of third party witnesses, supplementing its discovery responses to disclose the PCL/HMI device, or producing the device, True Chem and its counsel have:

(1) Forced PCC to pursue third-party subpoenas and depositions in an effort to uncover evidence that should have been revealed over a year earlier, knowing that this was causing PCC to incur additional time and expense on the eve of trial.

(2) Allowed Mr. Hinrich's false testimony to stand, without correction or notice to PCC or the Court.

---

[1] Hinrichs 3/25/21 Declaration, ¶3.

(3) Allowed its previous false interrogatory answers to stand, without correction, supplementation, or notice to PCC or the Court.

(4) Failed to disclose important evidence in the case, including both evidence of the PLC device itself and of its client's spoliation, despite its duty of candor to the tribunal.

(5) Methodically prepared True Chem's defense on the PLC issue, including arguments as to why the PLC/HMI device allegedly did not infringe the patents or only infringed "a little" and developing mitigating damages theories using the PLC/HMI device to suggest that only one of its frac trailers infringed and therefore PCC's damages should be reduced, knowing all the while that PCC had never seen the device and would have to scramble to address it if/when revealed.

Based on these newly admitted facts, it is now apparent that both True Chem and its counsel at John & Morgan acted willfully and in bad faith. True Chem has engaged in this behavior longer, for over a year and a half. But counsel at John & Morgan knowingly participated in the deception for two months—knowing that trial was imminent. Again, the only reason that we know this now is because PCC uncovered the truth.

### III.    True Chem's efforts to gain a litigation advantage from its late disclosure of the PLC reveals that it has not learned its lesson.

True Chem claims to be contrite, but its recent litigation conduct shows otherwise.  For example, True Chem has presented a supplemental report from its expert, Patrick Steele, that relies on the new evidence about the timing of True Chem's installation of the PLC/HMI, along with the absence of information regarding whether True Chem installed the device in its other trailers, to argue that the T-9 trailer could not have infringed until at least May 2019 and that it was likely the only trailer that could have infringed.[2] Mr. Steele also engages in a detailed technical analysis—similar to the technical (and irrelevant) arguments in True Chem's sanctions response—regarding why the PLC did not provide for "remote monitoring" of the pumps. Of course, True Chem had

---

[2] ECF No. 315, Notice of Filing Steele Supplemental Report, at 5-6.

the PLC all along, and if it wished to provide an expert opinion about whether the device remotely monitors the pumps, it should have done so in accordance with the scheduling order. The Court should strike Mr. Steele's newly disclosed opinions, both as a sanction for True Chem's misconduct, and due to True Chem's failure to timely disclose the opinion under Federal Rule of Civil Procedure 16 and the Tenth Amended Scheduling Order governing this case. *O2 Micro Intern. Ltd.*, 449 F. Appx. at 931 (affirming district court's exclusion of non-infringement expert as sanction for violating court orders); *Emerson v. Johnson & Johnson*, CV H-17-2708, 2019 WL 764660, at *3 (S.D. Tex. Jan. 22, 2019), appeal dismissed, 19-20276, 2019 WL 5390017 (5th Cir. Aug. 27, 2019) (dismissing untimely disclosed expert report under Rule 16).

True Chem also attempts to use the deposition testimony of the third party contractors that installed the PLC/HMI device and software on True Chem's trailer, Joshua Bittler and Ben Walter, for the same purpose as the opinions of Patrick Steele—to argue against infringement and to try to limit PCC's damages.[3] But this deposition testimony raises more questions than it answers. Mr. Bittler and Mr. Walter testified about their personal involvement in the project—but they do not know how True Chem used the PLC/HMI after their project concluded. For example, Mr. Walter left the project because he moved to a new employer who also performed work for PCC.[4] This raises the question of whether True Chem did not want Mr. Walter to work on the project anymore because it did not want his employer to reveal its activity to PCC.[5] And after Mr. Walter stopped his programming work, B&H hired another contractor, Aaron Shine, to finish the project.[6] PCC has not had time to perform discovery on any of these new matters.

---

[3] Response at 11-12.
[4] Exhibit F, Ben Walter Deposition 38:20-42:19.
[5] *See id.*
[6] Exhibit H, Josh Bittler Deposition 53:1-22.

True Chem also purports to offer a stipulation that the T-9 trailer was used on all its frac jobs after August 2019. But this proposal is remarkably disingenuous given that True Chem has separately filed a motion to strike PCC's expert opinion on damages for ***all of 2020*** based on a claimed lack of evidence of infringing frac trailer sales in 2020-2021. Furthermore, the bulk of PCC's lost profits damages are from 2018.

All this conduct reveals exactly why PCC has been prejudiced and why the "sanctions" proposed by True Chem do not come close to leveling the field. PCC has not had an adequate opportunity to perform discovery on any of these new issues. How exactly did the PLC/HMI device work and interact with the Graco controllers? How often was it used, and in which trailers? Is this really the only device that True Chem used to automate its trailers, or were there others? The list goes on, and PCC cannot pursue this discovery at this late date without delaying trial further—a result that would allow True Chem to benefit from its own misconduct.

## PRAYER

The evidence and True Chem's admissions establish bad faith and willfulness. They establish spoliation. They establish that True Chem lied to the Court and to PCC. And they establish that True Chem's counsel enabled this behavior for the two critical months leading up to trial, only revealing the existence of the PLC/HMI when they had been caught. The only appropriate way to address conduct of this nature and to deter such abuses in the future is to award PCC death penalty sanctions.

WHEREFORE, PREMISES CONSIDERED, PCC respectfully requests that the Court:

(1) GRANT its motion for sanctions;

(2) Enter death penalty sanctions against True Chem striking its pleadings and entering a judgment that True Chem willfully infringed the 452 and 501 patents;

4824-3524-6818

(3) Alternatively, enter the sanctions requested by PCC in its motion for sanctions; and

(4) Grant PCC any such further relief to which it may be justly entitled.

Respectfully submitted,

Daniel Scardino
Texas State Bar No. 24033165
SCARDINO LLP
501 Congress Avenue, Suite 150
Austin, TX  78701
Tel.: (512) 443-1667
Fax: (512) 487-7606

Steve McConnico
Texas Bar No. 13450300
Paige Arnette Amstutz
Texas State Bar No. 00796136
Robyn Hargrove
Texas State Bar No. 24031859
SCOTT, DOUGLASS & MCCONNICO, LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
smcconnico@scottdoug.com
pamstutz@scottdoug.com
rhargrove@scottdoug.com

***Attorneys for Plaintiff***
***Performance Chemical Company***

8

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I certify that, on March 25, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Robyn Bigelow Hargrove

4824-3524-6818