IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **PERFORMANCE CHEMICAL COMPANY,** | § § § | |
| *Plaintiff* | § | W-21-CV-00222-ADA |
| -vs- | § § | |
| **TRUE CHEMICAL SOLUTIONS, LLC,** | § § | |
| *Defendant* | § § | |

### ORDER

Before the Court is Plaintiff Performance Chemical Company's (PCC) Motion for Sanctions, which was filed on March 23, 2021. ECF No. 308. Defendant True Chemical Solutions, LLC (True Chem) filed its reply on March 25, 2021. ECF No. 320. PCC filed its response on March 25, 2021. ECF No. 326. In general, the motion relates to True Chem seemingly concealing vital evidence until mere weeks before trial. The Court heard oral arguments on this motion on March 26, 2021, during which the Court issued a temporary injunction against True Chem until further order of the Court. *See* Mins., ECF No. 329. Upon consideration of the motion, the parties' arguments, and the relevant facts and law, the Court **GRANTS** PCC's Motion for Sanctions and will impose sanctions against True Chem as described herein.

### I. LEGAL STANDARD

A district court possesses the inherent power to sanction a litigant, including by dismissing a case. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 632 (1962); *Arista Records, LLC v. Tschirhart*, 241 F.R.D. 462, 464 (W.D. Tex. 2006). The inherent powers of federal courts, however, "must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). This inherent power arises only when the litigation is instigated or conducted in bad faith or when

1

the litigants or counsel "willfully abuse judicial processes." *Arista Records*, 241 F.R.D. at 464 (citing *Breazeale v. Smith*, 857 F.2d 258, 261 (5th Cir. 1988)).

Under Federal Rule of Evidence 37(b)(2), a court may issue sanctions against a party who "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Among the sanctions specifically allowed by Rule 37 is "rendering a default judgment against the disobedient party." *Id.* To support the severest sanctions under Rule 37 — striking pleadings, dismissing a case, or rendering default judgment — the Fifth Circuit requires a finding of bad faith or willful conduct. *Arista Records*, 241 F.R.D. at 465 (citing *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990).

In addition to bad faith, the Fifth Circuit has specifically required several factors to be present before dismissing a case for discovery abuse. *Id.* (citing *FDIC v. Conner*, 20 F.3d 1376, 1380–81 (5th Cir. 1994)). "Those factors include: (1) that the violation of the discovery order be attributable to the client instead of the attorney; (2) that the violating party's misconduct must cause substantial prejudice to the opposing party; and (3) a finding that less drastic sanctions would not be appropriate." *Id.*

## II. DISCUSSION

### a. Background

PCC's claims against True Chem involve allegations that True Chem infringes PCC's patented Automated Water Treatment Trailers, or frac trailers. *See* Mot., ECF no. 308, at 3. Throughout the litigation, the Parties identified as a key issue whether True Chem automated its frac trailers by using a programmable logic controller, or PLC, to automate the pumps within the trailer. *Id.* During the discovery process, PCC requested that its expert be allowed to inspect a True Chem frac trailer, which True Chem resisted. *Id.* When the Parties raised the issue, the Court

ordered True Chem to allow the inspection. During the hearing, PCC expressed concerns that True Chem would present an incomplete trailer for inspection, and this Court's order was specific — *uniquely and directly* specific — that the inspection be of a trailer that was complete and included all of the relevant components:

> THE COURT: Mr. John, what I want you to make available to Mr. Scardino and his expert tomorrow are all of the components of the equipment that you install that are owned or controlled by True Chemical Solutions. Whether they are attached or not, . . . anything that is in the custody or control of True Chemical Solutions that's a part of the equipment that True Chemical Solutions installs at the customer facility I want you to make available to Mr. Scardino and his expert tomorrow. Does that make sense?
> MR. JOHN: Yes, Your Honor. We will do that. Anything that's in our custody and control and in our possession there and that would be connected for operation on the trailer we will of course make that available.

*See* Hr'g Tr., Jan. 15, 2020, at 14:9–15:3.

In response to this Court's order, the Defendant produced trailers for inspection. When PCC inspected the trailers, no PLC automation device was found, attached or detached, despite the fact that the trailers were manufactured so as to be capable of automation. Mot., ECF No. 308, at 4–5.

PLC also sought to elicit information about whether the frac trailers were automated from True Chem's employees in sworn depositions. In response to questions on this topic, True Chem employees *repeatedly* testified under oath that it did not automate frac trailers by installing a PLC. Examples include (among others):

1. True Chem's frac division manager and Vice President of Operations, Tyler Hinrichs, when asked whether True Chem had any connections in its trailers that could be used with a PLC, responded "[w]e don't mess with that." He further testified "I don't have any flow meters and I don't use any software[,]" "I don't have an automated trailer,"

3

and that, in his opinion, "if you take the [human] out of it . . . you're asking for disaster." Mot., ECF No. 308, at 5.

2. In True Chem's interrogatory responses, it stated: "1) True Chem is unaware of any electronic communication between one pump and another pump; 2) True Chem is unaware of any electronic communications between a pump and a control device (other than a pump controller)." *Id.* at 6.

3. When PCC sought an order compelling inspection of True Chem electronic devices used in connection with remotely monitoring and controlling pumps in its frac trailers, True Chem stated: "None of True Chem's laptops, computers, servers, or smartphones have those capabilities. The only devices having at least some of the identified capabilities were presented in True Chem's frac trailers during PCC's inspection in January. The only devices that include these capabilities are the pump controllers that were present in True Chem's frac trailers during PCC's inspection in January, as specifically requested by PCC. True Chem has already produced all devices that are responsive to this new request. True Chem has provided full and complete inspections of its frac trailers, which PCC relies upon with respect to its infringement contentions." *Id.* at 7–8.

As a result of this obfuscation by the True Chem employees, PCC was forced to rely on circumstantial evidence to prove up its infringement theories regarding automation. *Id.* at 5.

Finally, 154 days *after the close of discovery* and in response to a court-ordered electronically-stored information search, True Chem produced more than 50,000 new documents, which contained information that led to the discovery of third-party automation companies who appeared to have been retained by True Chem to automate its frac trailers. *Id.* at 9.

Upon subpoenaing one of these third-party companies who had been in communication with True Chem concerning automation of the trailers, PCC obtained an invoice directed to Tyler Hinrichs, describing the project as "work performed and completed for *True Chemical Solutions Automation Trailer*." Further depositions of the third-party automation companies confirmed that True Chem hired the third party in 2019 to install a PLC on frac trailers and that those PLC devices were still mounted the last time the third-party company interacted with the trailer in 2019. PCC asserts — and the Court agrees — that, given the physical size of the PLC device in question, unbolting and removing it from a trailer so that it would not be available for the Court-ordered inspection by PCC would require considerable effort. Further, it is not a small device that is easily lost.

While True Chem disputes the implication that it removed the PLC device specifically to dodge discovery, it "does not dispute the basic facts of the [third-party automation project] as recounted in PCC's motion." Resp., ECF No. 320, at 2.

**b. Application**

What distinguishes this case from the more "routine" situation where the Court has to determine whether the allegations of misconduct are true, is that PCC's contentions of True Chem's misdeeds are largely undisputed. It is really not in serious dispute that (a) True Chem hid material evidence, (b) True Chem disregarded and disobeyed not just normal discovery practices but a *specific* mandate from the Court to provide a complete frac trailer for inspection, (c) True Chem failed to preserve evidence and may have destroyed evidence by dismantling a trailer for the specific purpose of hiding evidence of automation, (d) True Chem filed a declaratory judgment action alleging non-infringement without sufficiently reviewing its own documents and emails, and (e) True Chem's employees — no other phrase encapsulates it — *lied under oath* when asked

direct questions about automation. The Court is therefore forced to conclude that True Chem acted deliberately and in bad faith. The only remaining question is what sanction to apply.

PCC asks the Court to enter default judgment sanctions, also known as "death penalty sanctions." *See* Reply, ECF No. 326, at 2. The Court has already found that True Chem acted in bad faith by refusing to comply with a discovery order. In order to issue death penalty sanctions, the Court must also find (1) that the violation of the discovery order be attributable to the client instead of the attorney; (2) that the violating party's misconduct must cause substantial prejudice to the opposing party; and (3) that less drastic sanctions would not be appropriate. *Conner*, 20 F.3d at 1380–81.

The first prong is undisputedly satisfied.[1] True Chem admits the basic facts. It openly admits it made the unilateral decision that the 2019 PLC project had no relevance to the lawsuit. Resp., ECF No. 320, at 3. Worse still, True Chem's employee testified that the company did not employ automation, despite receiving an invoice for the automation project. *See* Hr'g Tr., Mar. 26, 2021, at 20:10–22:6.

Importantly, the Court also finds that these discovery violations are accompanied by a clear record of contumacious conduct and delay. *See Conner*, 20 F.3d at 1380 (noting that sanctions of dismissal with prejudice requires at least one of these factors accompany willfulness or bad faith). The Court issued a specific and clear order that True Chem make all components in its custody or control, whether attached to trailers or not, available for inspection. Hr'g Tr., Jan. 15, 2020, at 14:9–15:3. Despite this ruling, True Chem did not produce the PLC or even notify counsel of its

---

[1] Despite the Court's holding that the bad acts here can be attributable to the client, not the attorney, it is worth noting that True Chem's counsel at the law firm John & Morgan, PC knew of the existence of the automation project on January 20, 2021, *two months* before such information was revealed to PCC. *See* Reply, ECF No. 326, at 5. Counsel at Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, was retained late in the process, and the Court agrees that nothing suggests the AZA law firm knew of or was complicit in these matters.

existence until twelve months later. *See* Hr'g Tr., Mar. 26, 2021, at 34:21–25. Even then, True Chem did not take steps to amend pleadings, supplement interrogatories, or apprise opposing counsel or the Court of this concealment. *Id.* at 7:24–8:3. True Chem failed to do any of this despite an initial trial date of January 25, 2021, and a second trial setting on February 16, 2021. *Id.* at 8:6–16. In fact, the record shows True Chem failed to take any steps until PCC's discoveries forced it to sprint to somehow simultaneously save face and stave off sanctions.

PCC located invoices that were either concealed or overlooked as the result of willful incompetence on the part of the attorneys and then had to engage in third-party discovery to determine the nature of the invoices. *Id.* at 25:21–23. On March 17, 2021, PCC received an automation trailer invoice through subpoenaed documents that the third party working with True Chem issued *only a month before* this Court's specific order. *Id.* at 27:2–6. The following day, True Chem's counsel finally disclosed the PLC device to PCC. *Id.* at 27:6–8. This disclosure, however, fails to overcome a clear record of delay and contumacious conduct. True Chem produced invoices pertaining to the automation it continually denied existed in a 50,000-piece document dump after the close of discovery. *Id.* at 25:4–13. True Chem did not turn over the PLC device at this time. *Id.* at 25:18–20. True Chem acknowledges that PCC amended its witness list on February 5, 2021, to include third parties on the invoices. Resp., ECF No. 320, at 3. True Chem did not turn over the PLC device at this time. True Chem did not object when PCC filed a supplemental expert report on March 14, 2021, addressing the automation project. *Id.* Still, True Chem did not turn over the PLC device at this time. Given this pattern of delay and contumacious conduct when the Court had made its order uniquely specific, the Court cannot accept True Chem's self-serving statement that it disclosed the PLC device on March 18, 2021, because its counsel had completed an investigation into the device's background. *Id.* For a full year, True Chem

stonewalled production of the PLC device by improperly acting as the ultimate arbiter of relevance. Then, it stood silent until the walls began to erode.

The second prong is satisfied. For over a year, PCC has had to pursue litigation strategies while operating in darkness caused by True Chem's intentional concealment of relevant discovery as well as blatant misrepresentations. As a direct result of the misconduct of True Chem and its litigation counsel, PCC was forced to incur unnecessary attorneys' fees and discovery costs. As a result of the spoliation, critical evidence has been lost that can never be recaptured. *See* Hr'g Tr., Mar. 26, 2021, at 64:18–23. PCC had to engage in thorough and extensive third-party discovery, sending subpoenas and taking depositions up until the eleventh hour. *See id.* at 25:21–23, 28:6–8, 27:2–8. Only then, approximately a week before the trial setting, did True Chem disclose the PLC device existed. *Id.* at 27:20–28:1. Indeed, PCC's third-party investigation seems to have functioned as the sole catalyst that forced True Chem to finally disclose the existence of the device at this late stage in the litigation. *See id.* at 29:4–30:16. Indeed, despite each of the developments outlined previously, True Chem never amended pleadings, supplemented interrogatories, or apprised opposing counsel or the Court of this concealment. *Id.* at 7:24–8:3; *compare Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1033 (5th Cir. 1990) (granting sanctions when the plaintiff prevented his opponent from appropriately preparing for trial), *with Conner*, 20 F.3d at 1381 (declining to impose sanctions because the plaintiff had supplemented its interrogatories when the discovery period still had more than a year left at that time).

Shockingly, True Chem then tried to turn its failure to comply with the Court's order into its own gain by arguing that, because PCC forced disclosure by True Chem of the PLC project, PLC had to limit its timeframe for damages to the spring and summer of 2019 rather than the timeframe it had originally pled and prepared to prove until about a week before trial when True

Chem finally disclosed the PLC device's existence. Resp., ECF No. 20, at 12–13. This Court cannot understand why any attorney would attempt to use its own blatant discovery violations as a sword to argue that the opposition must limit its properly pleaded claims, but True Chem having done so amounts to misconduct that causes substantial prejudice to PCC. At the very least, True Chem's actions have undoubtedly caused substantial prejudice to PCC by forcing it to incur unnecessary costs and engage in extensive, unnecessary third-party investigations to discover about a week before trial that this relevant, requested evidence actually existed. Moreover, PCC would reasonably need to perform additional recovery on new issues that this discovery raises, delaying trial even further. Quite simply, True Chem prevented PCC's "timely and appropriate preparation for trial." *Conner*, 20 F.3d at 1381 (citing *Coane*, 898 F.2d at 1033).

Finally, the third prong is satisfied. When a party "demonstrates flagrant bad faith and callous disregard of its responsibilities," a court can choose the most extreme of sanctions without abusing its discretion or offending due process. *Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976). "[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976).

Despite the adversarial nature of our justice system, it has never blessed or condoned acts of deceit, concealment, or subterfuge. Instead, it provides a final and civil form of dispute resolution: judges or juries fairly weighing all of the relevant evidence to correctly resolve disputes between parties. Willful violations, such as the one before the Court today, risk undermining the strength and credibility of our judicial system. Adversarial litigation in our courts should not

diminish a party's integrity; if anything, it should strengthen it. True Chem's conduct shows a blatant contempt for the Rules of Civil Procedure that govern litigation and a flagrant disregard for the Court's order and the judicial process as a whole. Given the egregious conduct in this case, which persisted for over a year and might have gone undiscovered if not for sharp eyes diligently combing through 50,000 documents at the eleventh hour, the Court finds it can only adequately sanction True Chem's behavior with a death-penalty sanction. Indeed, the Court believes that anything less, despite any assurances that True Chem might finally comply with this Court's order and all future orders, could leave parties in other lawsuits feeling freer than Rule 37 contemplates these parties should feel to flagrantly flout the discovery orders of this Court. *Id.* Anything less than this most extreme sanction would not provide sufficient deterrence from similar behavior in other cases.

### III. Conclusion

Having found that True Chem violated the Court's discovery in bad faith while demonstrating a clear record of contumacious conduct and delay, True Chem caused substantial prejudice to PCC, and less drastic sanctions are not appropriate in this case, the Court finds that it has no choice but to impose the most extreme of sanctions. *Emerick*, 539 F.2d at 1381.

**IT IS THEREFORE ORDERED** that PCC's Motion for Sanctions (ECF No. 308) is **GRANTED**. Defendant True Chem's non-infringement defense and invalidity counterclaims shall be **STRICKEN**.

**IT IS FUTHER ORDERED** that the Court finds that True Chem has willfully infringed.

**IT IS FURTHER ORDERED** that True Chem be **PERMANENTLY ENJOINED** from continuing its infringing activity.

**IT IS FURTHER ORDERED** that PCC be awarded attorneys' fees.

Finally, the Court will hold a trial solely on the question of damages on July 19, 2021.

**SIGNED** this 20th day of May, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE