**In the United States District Court**
**For the Western District of Texas**
**Waco Division**

| | |
|---|---|
| **Performance Chemical Company**<br>Plaintiff<br><br>v.<br><br>**True Chemical Solutions, LLC**<br>Defendant | Civil Action No. 6:21-cv-00222 |

**Defendant True Chemical Solutions, LLC's Opposition to**
**Performance Chemical Company's Proposed Permanent Injunction Order**

## Introduction

The Court's May 20, 2021 Order (the "Sanctions Order") permanently enjoins Defendant True Chemical Solutions, LLC ("TrueChem") from "continuing its infringing activity." Dkt. 340 at 10. Plaintiff Performance Chemical Company ("PCC") now asks the Court to enter a far broader injunction. Dkt. 348 (PCC's Notice of Filing). PCC has not established its entitlement to the injunction it seeks, and the Court should deny PCC's proposed Permanent Injunction accordingly.

## Background

TrueChem is an oilfield services company that provides a range of chemical solutions specialized for hydraulic fracturing. Exhibit A, Pitcock Declaration at ¶ 4. In some instances, TrueChem provides chemicals directly to an oilfield operator who employs a third party to pump the chemicals into a well. *Id.* at ¶ 5. For other customers, TrueChem provides quality control services through which they monitor chemical treatments performed by the customer or a third party. *Id.* In other instances, TrueChem provides complete water treatment services through specialized "frac trailers" that it sends to customers' drilling sites. *Id.* at ¶ 6. The frac trailers employ peristaltic pumps that deliver metered chemical solutions through discharge ports in the trailer directly into the water line that supplies fracking materials into the wellbore. *Id.* at ¶ 7. TrueChem's current frac trailers are T-5, T-6, T-8, T-9, T-10, T-11, and T-12. *Id.* at ¶ 8. However, those trailers are capable of and often employed for other applications, such as delivering chemicals, on-site quality control labs, or water reclamation. *Id.* at ¶ 9.

PCC purports to be the owner US Patent Nos. 9,834,452 and 10,011,501 (the "Patents"). The Patents describe a method of automating frac trailers. Exhibit B, the '452 Patent; Exhibit C, the '501 Patent. The Patents' claims require, among other things, a water treatment trailer for processing multiple fluids simultaneously, a plurality of pumps connected in parallel, and a **controller communicating with each pump and with a network connected to a client device**.

1

*Id.* PCC's live pleading alleges generally that TrueChem infringes the Patents but does not specifically identify which of TrueChem's trailers it accuses of infringement. Dkt. 25, Second Amended Counterclaim, at ¶ 9.03.

Early in 2021, TrueChem disclosed that it had attempted to automate one of its trailers (T-9) in 2019. Sanctions Order, Dkt. 340, at 6. In considering possible sanctions, the Court noted it could make "a determination now that there is infringement. … Another thing I could do is determine that all of the accused products function in the same way, and therefore there would be infringement as to all of them." Exhibit D, March 26, 2021 Hearing Transcript at 5:1–6. The Court ultimately struck TrueChem's non-infringement and invalidity defenses, found TrueChem had willfully infringed, and permanently enjoined TrueChem "from continuing its infringing activity." Sanctions Order at 10. The Court did not, however, find that all of the accused products had infringed the Patents. *See id.*

PCC now asks for a permanent injunction that prohibits TrueChem from using any of its frac trailers "**or any other substantially similar** water treatment trailers" (emphasis added) and would require TrueChem to turn over any frac trailer to PCC. Dkt. 348. This is unwarranted because it would enjoin TrueChem from performing non-infringing acts, is well beyond what is pleaded in PCC's Complaint, and would amount to a pre-judgment seizure of TrueChem's property. Moreover, the order sought is impermissibly vague in its request for injunction and turn-over of "any other substantially similar water treatment trailers," without explanation or guidance as to what "substantially similar" means or any legal or factual justification for such relief.

## Discussion

The Court has already entered an injunction barring TrueChem from "continuing its infringing activity." *Id.* To the extent the entered injunction only applies to conduct actually infringing on the Patents (including the requirement that the frac trailers be automated and in

communication with a network), no further injunction is necessary beyond that contained in the Sanctions Order. TrueChem abandoned its automation efforts in 2019 (which only related to a single trailer—T-9), and it will not resume those efforts in the future. Exhibit A, Pitcock Declaration at ¶¶ 10-11. Thus, there currently is not, nor will there be any, further infringement of the Patents. PCC thus asks for a permanent injunction against non-infringing activity. PCC has not shown that it is entitled to the injunction it now seeks.

I. **The Court has not struck TrueChem's answer, so there is no default.**

PCC's Motion is premised on the idea that there is a default against TrueChem. This is not true. The Court has struck TrueChem's affirmative defense of non-infringement, but the Court has not struck TrueChem's answer or entered a default. Thus, PCC must prove its case at trial. This alone defeats TrueChem's Motion and prevents the Court from entering PCC's proposed injunction. PCC must establish its right to any injunction in the same manner as any other plaintiff and must show that the trailers to be enjoined, if any, at least meet a prima facie case for infringement by containing all the claim elements of the asserted claims. *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1321, 1317 (Fed. Cir. 2004) (an injunction must be sufficiently limited to products adjudged to infringe or those "no more than colorably different therefrom"); *see also M-I LLC v. FPUSA, LLC*, 626 Fed. Appx. 995, 999 (Fed. Cir. 2015) (injunction must not be overly broad and must not contain non-infringing products). Trailers that lack elements that could even arguably constitute "a controller in communication with each pump" and "configured to connect to a network to communicate with at least one client device" cannot infringe as a matter of law and, therefore, cannot support permanent injunctive relief. Exhibit B (the '452 Patent) at Claim 1 and Exhibit C (the '501 Patent) at Claim 1; *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) ("it is not enough to simply show that a product is *capable* of infringement") (emphasis

added); *ACCO Brands, Inc. v. ABA Locks Mfr. Co.,* 501 F.3d 1307, 1313 (Fed. Cir. 2007) (patent owner must show actual infringement rather than a capability of infringement).

**II.     A default would not relieve PCC of the need to prove its entitlement to an injunction.**

Even if TrueChem has defaulted, that does not mean PCC is entitled to the injunction it seeks. "A court may award an injunction, damages, and civil penalties on a default judgment. On default, however, the court does not accept as true allegations in the complaint regarding the relief sought by the plaintiff. Rather, the plaintiff is required to prove independently that it is entitled to the relief it requests." *W. Supreme Buddha Ass'n Inc. v. Oasis World Peace & Health Foundation*, No. 08-cv-1374, at *3 (N.D.N.Y. Aug. 30, 2010). This is well-settled with respect to a plaintiff's need to prove-up damages despite a default. The Second Circuit has reasoned that the same rule should apply to a request for a permanent injunction:

> To be sure, a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability. **But it is clear that the fact of liability alone does not establish a right to a specific form of relief.** Accordingly, unless the amount of damages are absolutely certain, the court is required to make an independent determination of the sum to be awarded. **We perceive no reason why a similar requirement should not be applicable to the granting of an injunction**, which is appropriately entered only after the exercise of a court's discretion, and upon a finding of the likelihood that the defendant would commit future violations if not enjoined.

*SEC v. Mgmt. Dynamics*, 515 F.2d 801, 814 (2d Cir. 1975) (emphasis added) (citations omitted). District courts across the country have followed the Second Circuit's lead in requiring the same evidentiary burden for all relief requested in a default—as opposed to only imposing a heightened burden of proof for unliquidated damages.[1]

---

[1] *See, e.g.*, *Adobe Sys. Inc. v. Gorsline*, No. 17-cv-03675, at 2019 WL 7938445, at *1 (N.D. Calif. June 28, 2019) ("A plaintiff must also prove its entitlement to other forms of relief, such as permanent injunction"); *Cent. Produce Corp. v. 32-18 M&M Corp.*, No. 17-cv-3841, 2018 WL 7327923, at *3 (E.D.N.Y. July 9, 2018) ("[T]he defendant's default is not considered an admission of the plaintiff's entitlement to an award of damages or requested injunction."), *report and recommendation adopted*, 2018 WL 4326925; *Oakley, Inc. v. Moda Collection, LLC*, No. 16-cv-

4

The Court should follow the Second Circuit's approach and require PCC to prove its entitlement to all relief and not just to damages. Otherwise, the Court would create a two-tiered evidentiary burden in which the injunctive relief would be easier to establish than unliquidated damages. On this record, such a requirement is fatal to PCC's requested injunction.

**III.     Even if TrueChem has admitted the allegations in PCC's live pleading, that pleading does not support the injunction PCC seeks.**

PCC is not entitled to its proposed injunction even if TrueChem has defaulted and thereby admitted the allegations in PCC's live complaint. As explained by the Federal Circuit, "[i]t is well established that the defendant, by its default, is deemed to admit the plaintiff's well-pleaded allegations of fact. That said, the defaulted defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Tazer Int'l v. Phazzer Elecs.*, 754 F. App'x 955, 962 (Fed. Cir. 2018). Even PCC's authority shows that a Court must assess the required elements of a permanent injunction in light of the well-pleaded allegations of the complaint. *See, e.g.*, *Wright v. E-Sys.*, No. 12-cv-4715, 2016 WL 7802996, at *6 (N.D. Tex. Dec. 20, 2016).

A plaintiff seeking a permanent injunction must prove "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

---

160, 2016 WL 7495837, at *1 (C.D. Calif. Sept. 28, 2016) ("A plaintiff must also independently 'prove-up' her entitlement to other forms of relief, including permanent injunctive relief"); *SEC v. E-Smart Techs.*, 139 F. Supp. 3d 170, 177 (D.D.C. 2015) ("Similarly, a plaintiff must prove its entitlement to injunctive relief based on actual evidence"); *Sprint Nextel Corp. v. Welch*, No. 13-cv-01174, 2014 WL 68957, at *8 (E.D. Cal. Jan. 8, 2014), *report and recommendation adopted*, 2014 WL 2106683 ("By analogy, plaintiffs must also 'prove-up' their entitlement to other forms of relief, such as a permanent injunction."); *In re Uranium Antitrust Litig.*, 473 F. Supp. 382, 392 (N.D. Ill. 1979) ("Because a default does not constitute an admission of the amount of unliquidated damages or of the propriety of injunctive relief, a decision on those issues may require the development of additional evidence").

defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

PCC has elected not to offer any evidence that these elements are satisfied. Instead, PCC merely files a proposed order without evidence or argument, apparently relying on the purported default by TrueChem to establish the necessary facts and law. But, as discussed above, a default only constitutes an admission of well-pleaded allegations in PCC's live pleading. Thus, PCC must attempt to meet the elements of a permanent injunction based on the following allegations:

> 8.04 . . . . Plaintiff/Counter-Defendant began operations on April 3, 2017 servicing at least three companies who were long-standing customers of Defendant/Counter-Plaintiff.
>
> \* \* \*
>
> 8.07 Continuing from December 5, 2017 and thereafter, Plaintiff/Counter-Defendant has used in commerce within the United an apparatus that infringes the one independent and 11 dependent claims of the '452 patent literally under 35 U.S.C. §271(a), by operation of the doctrine of equivalents, or both.
>
> 8.08 Continuing from July 3, 2018 and thereafter, Plaintiff/Counter-Defendant has used in commerce within the United States an apparatus that infringes the one independent and 15 dependent claims of the '501 patent literally under 35 U.S.C. §271(a), by operation of the doctrine of equivalents, or both.
>
> \* \* \*
>
> 8.10 Unless restrained, Defendant/Counter-Plaintiff will be damaged by Plaintiff/Counter-Defendant's continued infringement of the Patents for which it has no adequate remedy at law.

Dkt. 25, Second Amended Counterclaim, at ¶¶ 8.02–8.10.

The first element required for a permanent injunction is that the plaintiff has suffered an irreparable injury. PCC attempts to prove this through its conclusory pleading that it "has no adequate remedy at law." *Id.* at ¶ 8.10. This is not a well-pleaded allegation. It is "well-established that an injury is irreparable only 'if it cannot be undone through monetary remedies.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). Thus, a naked allegation

6

that a plaintiff faces "irreparable harm" is insufficient without an explanation of why money damages would not be an adequate remedy. *See Bowling v. Dahlmheimer*, 18-cv-00610, 2018 WL 6582826, at *3 (E.D. Tex. Oct. 3, 2018); *see also PharMerica Corp. v. Advanced HCS LLC*, No. 17-cv-180, 2017 WL 7732174, at *4 (E.D. Tex. July 13, 2017) ("Without an explanation as to why there is no adequate remedy at law, the Court has little alternative but to grant the [12(b)(6)] Motion in this regard."). PCC therefore has no evidence or allegation to establish the irreparable injury element of its proposed injunction.

The second element required for a permanent injunction is that other remedies are inadequate. PCC argues that this element is present because TrueChem has been "servicing at least three companies who were long-standing customers of" PCC. Dkt. 25, Second Amended Counterclaim, at ¶ 8.04. PCC does not allege that TrueChem serviced these customers by infringing the Patents—or even that these customers use TrueChem's frac trailers at all. PCC offers nothing to show the inadequacy of monetary damages but its attorneys' *ipse dixit*. This accords with the lack of specificity in PCC's pleadings. PCC seeks an injunction prohibiting TrueChem from using **any** of its trailers for **any** purpose, but PCC's pleading does not allege that *all* of TrueChem's trailers can *only* be operated in a manner infringing the Patents. Thus, TrueChem cannot be deemed to have admitted such facts. The record shows that TrueChem could only have infringed the Patents by automating a frac trailer in a specific manner. TrueChem's experiment with automating trailer T-9 began and ended in 2019. Exhibit A, Pitcock Declaration at ¶ 10; Exhibit E, Deposition of Joshua Bittler at 13:12–16:15, 31:18–24 (third-party witness who worked for B&H to implement automation of the T-9 trailer beginning in 2019 but did not install a PLC or HMI on any other trailers); Exhibit F, Deposition of Ben Walter at 7:3–23, 77:20-78:5 (third-party witness subcontracted by B&H to implement automation stated that he only worked on one

7

trailer for TrueChem). Thus, any infringement by TrueChem involved only one trailer, occurred only in the past, and is not threatened to occur in the future. A permanent injunction is not necessary to prevent future irreparable harm to PCC.

The third element required for permanent injunction is that the "balance of hardships" supports injunctive relief. PCC could likely show this element if it merely sought an injunction barring TrueChem from automating its trailers in a manner that infringes the Patents. Instead, PCC demands an injunction barring TrueChem from using its T-4, T-5, T-6, T-8, T-9, T-10 and T-12 trailers, and any "substantially similar" trailer, even though there is no showing that any of these trailers currently infringe the Patents or that any trailer other than T-9 ever potentially infringed the Patents. Moreover, there is no showing that these trailers are incapable of being used in a non-infringing manner. Thus, TrueChem would be unable to use the trailers for *any* purpose such as storing office equipment or hauling hay. PCC's request for injunction and turn-over of "any other substantially similar water treatment trailers," would leave TrueChem at the mercy of PCC's subjective interpretation of what "substantially similar" means and provides no legal or factual justification for the relief sought by PCC. By contrast, denial of the injunction PCC requests would merely deny PCC the windfall of destroying a competitor's non-infringing business operations. Again, an injunction limited only to infringing activity would likely survive the balance of hardships requirement because it would not enjoin TrueChem from non-infringing activities. But PCC's overbroad injunction seeks to impose severe hardship on TrueChem by preventing TrueChem from performing any non-infringing activities at all.

The final required element is that the public interest will be furthered by the requested injunction. The public has an interest in ensuring that patentees control the use of their patents. But PCC's proposed injunction does not merely prohibit infringement. Instead, it bars the use of

any of TrueChem's frac trailers regardless of whether they infringe the Patents. Such an injunction would harm the public interest by reducing competition and consumer choice. *See In re Gomez*, 520 B.R. 233, 241 (S.D. Tex. Bankr. 2014) ("The only relevant public interest appears to be the public's interest in competition and freedom of choice: 'If the injunction is denied, the public will be free to choose Plaintiff or Defendant to receive its beauty services'"); *see also Trager Pellet Grills LLC v. Dansons US LLC*, No. 19-cv-04732, 2019 WL 6492446, at *4 (D. Ariz. Dec. 3, 2019) ("Considering the Court's determination that consumer confusion is unlikely in the absence of a preliminary injunction, whereas a preliminary injunction would force Dansons to eliminate one of its sub-brands, thereby restricting consumer choice, the Court concludes that the public's interest in free competition outweighs its interest in preventing consumer confusion"). Once again, this is an element that PCC might have satisfied with a narrower injunction. PCC fails this element because of its decision to seek an injunction covering non-infringing competition.

**IV.    Even if PCC met its burden of proof, its proposed injunction is still too broad.**

PCC's proposed injunction does not merely seek to prevent TrueChem from using any of its frac trailers. PCC also demands that TrueChem give its trailers to PCC in exchange for nothing. PCC has never pleaded entitlement to a turnover order, but in support, PCC cites a case requiring surrender of an infringing product (a production mold) that had no non-infringing use. *See United Construction Prods. v. Tile Tech, Inc.*, 843 F.3d 1363, 1372 (Fed. Cir. 2016). PCC cites no authority in which a defendant was required to surrender equipment that could readily be used for non-infringing purposes (*e.g.*, non-automated frac support, chemical storage, hay hauling, etc.). The Court cannot take away TrueChem's valuable, non-infringing property as part of an injunction and without compensation. In the event, PCC obtains a judgment, such judgment is upheld on appeal, and TrueChem fails to pay the judgment, then perhaps TrueChem's property might be subject to being sold to satisfy a judgment, but such event would at least require a valuation of the

property and an auction with an opportunity for secured creditors and third parties to bid—not a seizure without valuation or compensation.

PCC further asks that the Court issue a prior restraint of speech barring TrueChem from "contribut[ing] to or induc[ing] (by instructing, encouraging, or otherwise) anyone to engage in the Enjoined Conduct." Because the Court struck TrueChem's invalidity counterclaim, there has never been a determination that the Patents are valid and enforceable. If TrueChem's owners, employees, or agents publicly stated—including in an appellate brief in this case or in a conversation with another person in the fracing industry—that they believed the Patents were invalid, such statements would encourage others to infringe the Patents. The Court can certainly prohibit TrueChem from directly or indirectly infringing the Patents, but the Constitution does not allow the Court to impose a prior restraint barring TrueChem's owners, employees, and agent from making statements or even providing opinions that might encourage others to infringe. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 558 (1976) ("Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity").

## Conclusion

The Court has already issued an injunction against TrueChem's "continuing its infringing activity." PCC is not entitled to the broader permanent injunction and property seizure it now requests. Relying on a purported default, PCC has not provided any evidence of the elements necessary for a permanent injunction. But TrueChem has not defaulted, nor would a default relieve PCC of its burden to prove the elements of a permanent injunction. Further, PCC has not pleaded enough facts to support its requested injunction. Finally, PCC's proposed injunction improperly demands a pre-judgment turn-over of non-infringing property and prior restraint of TrueChem's speech. The Court should deny PCC's Proposed Injunction Order and grant TrueChem all other relief to which it is entitled.

Respectfully submitted,

**Meade & Neese LLP**

*/s/ D. John Neese, Jr.*
D. John Neese, Jr.
Texas Bar No. 24002678
Federal Bar No. 22641
Andrew K. Meade
Texas Bar No. 24032854
Federal Bar No. 32811
Samuel B. Haren
Texas Bar No. 24059899
Federal Bar No. 1743266
Holly H. Barnes
Texas Bar No. 24045451
Federal Bar No. 570020
2118 Smith Street
Houston, Texas 77002
713-355-1200
713-658-9010 (Neese direct)
jneese@meadeneese.com
ameade@meadeneese.com
sharen@meadeneese.com
hbarnes@meadeneese.com

**Attorneys for Defendant**
**True Chemical Solutions, LLC**

## Certificate of Service

A true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system, in accordance with L.R. CV-5, on June 24, 2021.

*/s/ D. John Neese, Jr.*
D. John Neese, Jr.